Commonwealth *v.* Williams, Appellant.

Argued November 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert W. Geigley,* for appellant.

*Oscar F. Spicer,* for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 16, 1973:

This is an appeal from a sentence of life imprisonment on a conviction of first-degree murder imposed upon Raymond Williams on October 27, 1971.

Appellant's conviction derived from events of the evening of August 8 and the early morning of August 9, 1970. The appellant and victim were patrons of a Gettysburg dramshop, the Dorsey Stanton Legion. A confrontation between the appellant and victim, and others, led to harsh words and fisticuffs immediately outside the barroom premises. Several hours after the cessation of initial hostilities, at about 2:00 a.m. on August 9, 1970, the appellant and two confederates, David Stull and Gregory Williams, set out in appellant's automobile in search of the victim. They found the victim, David Gebhart, sitting alone in a parked car a short distance from the scene of the earlier confrontation. According to the testimony of his confederates, appellant alighted from the passenger side of the car with a shotgun and approached the victim, who was still seated in the parked vehicle. The same testimony indicates that appellant spoke as he moved to the parked vehicle: "There you are you big bad sonofabitch, I'll teach you to beat my ass."

The victim responded: "Hey, take it easy buddy."

Appellant then shot Gebhart through the neck at close range, mortally wounding him. Appellant was apprehended at his home in a bedroom with the shotgun disassembled on the bed. Part of the gun was found wrapped in a blanket and hidden beneath a mattress at a neighbor's home.

The questions raised by this appeal reduce themselves to (1) whether the verdict is supported by the evidence presented by the Commonwealth, and (2) whether the Commonwealth's alleged suppression of material evidence and presentation of false evidence has denied the appellant due process.

In determining whether the evidence presented is sufficient to sustain the conviction, the test is, whether accepting as true all of the evidence of the Commonwealth and all reasonable inferences arising therefrom upon which the jury could properly have reached its verdict, was it sufficient in law to prove beyond reasonable doubt that the appellant was guilty of the crime of which he stands convicted. *Commonwealth v. Wrona*, 442 Pa. 201, 275 A. 2d 78 (1971); *Commonwealth v. Whitaker*, 440 Pa. 143, 269 A. 2d 886 (1970); *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970); *Commonwealth v. Commander*, 436 Pa. 532, 260 A. 2d 773 (1970); *Commonwealth v. Frye*, 433 Pa. 473, 252 A. 2d 580 (1969).

Appellant, in his brief, has reconstructed the evidence presented by the Commonwealth for the purpose of highlighting the minor discrepancies in testimony which arose when several witnesses testified with respect to the detailed factual circumstances presented by this case. Notwithstanding these discrepancies, a consideration of the evidence more than amply supports this jury verdict. A recounting of immaterial conflicts does not alter the fact that the Commonwealth presented eyewitness testimony and strong circumstantial evidence that the appellant sought out the victim and shot him without justification, excuse or adequate provocation.

Appellant's claim that the Commonwealth presented *false evidence* is bound up in the same bundle of claimed factual discrepancies which he also cited for the propo-

sition that the verdict was unsupported by the evidence. The complained of evidence was merely minor discrepancies in the Commonwealth's case and in no way could be considered *false evidence*.

Appellant claims that the Commonwealth *suppressed* evidence of a blood-covered knife which was found in a hedge near the scene of the homicide. In fact, evidence of the knife was admitted through direct examination of a Commonwealth witness. Defense counsel thereafter argued at length that the fact of the blood-covered knife, when considered with photographs of the victim's body, indicated that death was inflicted by a knife wound and that therefore the victim was dead before the appellant fired the shot which was witnessed and testified to by his confederates. This argument was made, upon evidence admitted, and rejected by the jury. There was no suppression of evidence with respect to the knife.

Finally, it is appellant's position that co-defendants David Stull and Gregory Williams entered into an agreement with the prosecution whereby, in exchange for their testimony against the appellant, they would not be prosecuted for their respective roles in this homicide. Appellant urges that the testimony of these eyewitnesses was so critical to the Commonwealth's case, and their credibility was such an important issue, that the jury was entitled to know of this alleged agreement, and its suppression by the Commonwealth violated due process requirements enunciated in *Giglio v. United States*, 405 U.S. 150 (1971), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959).

Appellant relies most heavily on *Giglio*, a decision which rested on the following critical facts: the government granted pre-testimonial immunity to a witness whose testimony was self-inculpating and vital to the

prosecution's case; neither counsel for the government nor the witness, when asked on cross-examination, disclosed the government's no prosecution pledge. *Giglio* cannot apply, however, in this context because (1) there is no on-the-record indication that either Gregory Williams or David Stull was granted pre-testimony immunity, and (2) there was no inquiry by defense counsel into the possibility of an agreement and thus no affirmative denial of immunity as was present in *Giglio*.* We will not apply *Giglio* on the strength of appellant's unsupported allegation that the Commonwealth and these witnesses had struck a pre-testimonial "deal," especially since appellant, during trial, neglected to probe the possibility of an agreement.

Judgment affirmed.

---

* The record discloses the following colloquies: "(Mr. Geigley, for the defendant): For the purposes of identification are you the same Greg Williams who was arrested in connection with the crime here and charged with the same crimes that Raymond Williams, the Defendant here tried, was charged? (Gregory Williams): Yeah, I'm the same person. Q. Greg, you have not been tried on these charges yet, have you? A. If you mean I haven't been brought to trial yet it's been continued until May is my understanding. . . . (By the District Attorney): Are you presently in jail on this charge? (David Stull): Yes sir. . . . (Mr. Nikirk, for the defendant): Now, Mr. Stull, you are charged by the Commonwealth with the same offenses for which Mr. Williams [appellant] is charged and these offenses are still pending against you aren't they? (David Stull) Yes sir. Q. I believe you have been incarcerated since on that charge? A. Yes sir. Q. And presently incarcerated? A. Yes sir."

These disclosures permitted the jury an opportunity to weigh the witnesses' veracity in view of their involvement in this homicide. There were no questions respecting prosecutorial grants of immunity and there is no indication on the record that pre-testimonial immunity was granted.