370 A.2d 1193
**COMMONWEALTH of Pennsylvania**
v.
**James Bernard MYLES, Appellant.**
Supreme Court of Pennsylvania.
Argued April 27, 1973.
Decided March 16, 1977.

Abraham J. Brem Levy, John F. X. Fenerty, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., Wm. P. Boland, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

PER CURIAM:

Appellant, James Bernard Myles, was convicted by a jury of murder in the first degree, forcible rape, and conspiracy. Post-verdict motions were denied, and this appeal followed. Appellant challenges the judgments of sentence for murder in the first degree, forcible rape, and conspiracy to commit rape. *See* Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673,

art. II, § 202(1) and § 503(a), 17 P.S. § 211.202(1) and 211.503(a) (Supp.1974).

■■ Appellant raises only two issues in this appeal. First, he argues that the evidence was insufficient to sustain the jury's verdict. After a verdict of guilty, the evidence must be reviewed in the light most favorable to the prosecution. *Commonwealth v. Yount,* 445 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Lee,* 450 Pa. 152, 299 A.2d 640 (1973). We have reviewed the record and conclude that from the evidence and the reasonable inferences arising therefrom, the jury could properly have found that all the elements of the crimes of murder in the first degree, forcible rape, and conspiracy had been proved beyond a reasonable doubt. *Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Williams,* 450 Pa. 327, 301 A.2d 867 (1973).

■ Appellant next argues that the trial court erred by denying a requested jury instruction. Appellant requested the following point for charge: "Under an indictment for murder, you may return a verdict of voluntary manslaughter." The Court being equally divided as to this issue, the judgments of sentence are affirmed. Mr. Chief Justice Eagen and Mr. Justice Pomeroy would affirm for the reasons expressed in the opinion in support of affirmance in *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977) (J87 of 1974 filed January 28, 1977). Mr. Justice Nix would affirm for the reasons stated in his separate opinion in support of affirmance herein. Mr. Justice O'Brien, Mr. Justice Roberts, and Mr. Justice Manderino would reverse and remand for a new trial for the reasons expressed in their respective opinions in support of reversal in *Cain,* supra.

The judgments of sentence are affirmed.

Former Chief Justice JONES did not participate in the consideration or decision of this case.

EAGEN, C. J., filed an opinion in support of affirmance, in which POMEROY, J., joined.

NIX, J., filed an opinion in support of affirmance.

## OPINION IN SUPPORT OF AFFIRMANCE

EAGEN, Chief Justice.

In *Commonwealth v. Hilliard*, 471 Pa. 318, 370 A.2d 322 (Filed February 28, 1977) four members of this Court, Mr. Chief Justice Jones, Mr. Justice Eagen, Mr. Justice Pomeroy and Mr. Justice Nix, voted that the denial of a request to instruct the jury on voluntary manslaughter was not reversible error under the same circumstances this case presents.

POMEROY, J., joins in this opinion.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

This appeal raises the question of whether our decision in *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) (holding that in all prosecutions for murder an accused is entitled upon request to a jury instruction on voluntary manslaughter) is applicable to trials which commenced prior to the date of that decision. Because I have not yet had the opportunity to articulate my position on this issue, and because the question is squarely raised in this case, I am constrained to set forth my views at this time.

In *Jones*, this writer's Opinion in Support of Affirmance, joined by Mr. Justice EAGEN (now Chief Justice EAGEN) and Mr. Justice O'BRIEN, expressed the view that because a jury was traditionally imbued with the

power to return a verdict of voluntary manslaughter in a prosecution under an indictment for murder, notwithstanding the absence of evidence of provocation and passion, the jury must be informed of their power to return such a verdict and apprised of the elements of the offense, if so requested, by the defendant. We therefore announced, under our supervisory power, a rule "that henceforth a defendant under indictment of murder will be entitled, *upon request,* to have the jury advised of its power to return a verdict of voluntary manslaughter." *Supra* at 563, 319 A.2d at 148. The rule announced in *Jones* was clearly prospective in nature, and accordingly, the appellant in *Jones* was denied relief and the judgment of sentence was affirmed.

The instant appellant's trial antedated our decision in *Jones,* and under the holding of that opinion, he is not entitled to the benefit of the prospective rule announced in that case. Appellant contends, however, that the pre-*Jones* practice, which permitted a trial court to refuse a charge of voluntary manslaughter if the evidence did not provide a rational basis for such a verdict, was violative of due process. It is urged by appellant that a charge on voluntary manslaughter, upon request, is a requirement mandated by the Constitution and for this reason, the argument goes, it must necessarily be given retroactive application. I do not agree. Assuming, without deciding, that the change in the former practice was constitutionally mandated, *see e. g., United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3rd Cir. 1974); *Commonwealth v. Jones, supra* (Opinion in Support of Reversal), the Constitution does not mandate the retroactive application of this doctrine. Since *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the United States Supreme Court has refused to grant retroactive application of important new constitutional requirements to cases tried before the decisions were announced. *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790

(1975) (decision in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) holding that the exclusion of women violates the requirement that petit juries be selected from a representative cross section of the community not retroactively applied); *Michigan v. Payne,* 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973) (decision in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) prohibiting more severe sentences after retrial not retroactively applied); *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L. Ed.2d 1308 (1968) (decision in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) mandating a jury trial in serious criminal cases not retroactively applied); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (decisions in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California,* 388 U.S. 263, 77 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) requiring exclusion of tainted identification evidence not retroactively applied); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (decisions in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966) guaranteeing effectuation of the privilege against self-incrimination not retroactively applied); *Tehan v. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (decision in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) forbidding judicial and prosecutorial adverse comment on the failure of a defendant to testify not retroactively applied); *Linkletter v. Walker, supra* (decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) requiring exclusion of evidence obtained in violation of the Fourth Amendment not retroactively applied).

In denying litigants who have already been tried the benefit of these new constitutional rules the Supreme Court has made clear that the choice between retroactivi-

ty and prospectivity "in no way turns on the value of the constitutional guarantee involved." *Johnson v. New Jersey, supra* at 728, 86 S.Ct. at 1778.

"We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved." *Id.* Instead the Court has looked to the particular objective of the constitutional rule in question, and within the context of the criteria enunciated in *Linkletter v. Walker, supra,* resolved the problem.

"The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a new retroactive application of the new standards."

*Stovall v. Denno, supra,* 388 U.S. at 297, 87 S.Ct. at 1970.

Utilizing the above test I believe that neither the Constitution nor any strong policy consideration within the supervisory power of this Court requires a retroactive application of our rule in *Jones.*

With regard to the first standard, the purpose to be served by the rule, the United States Supreme Court has said that where the major purpose of the rule is to overcome an aspect of the trial that "substantially impair[s]" the truth-finding function, raising serious questions about the accuracy of guilty verdicts, then full retroactivity should be afforded. *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1970). The rule in *Jones* was formulated and designed to secure consistency and to eliminate "unseemly arbitrariness" in the judicial process, *see United States ex*

*rel. Cannon v. Johnson,* 396 F.Supp. 1362 (E.D.Pa.1975). The uniformity sought to be achieved by the standard, however, has little or no relationship to the reliability of the truth-finding function of the trial or to ascertaining the guilt or innocence of the accused. Not only did the pre-*Jones* practice not "substantially impair" the integrity of truth-finding process, but the post-*Jones* practice will not enhance the accuracy of that process. Since the change in the law requires that a jury will now receive an instruction on a crime for which there is no evidence at all, such a verdict is in no way reflective of what actually occurred at the time of the crime.

Since retroactivity is not compelled by the first criteria of *Linkletter v. Walker, supra,* the focus must then be directed to the reliance by law enforcement authorities on the old standard and the burden on the administration of justice which a retroactive application would engender. *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Reliance on the pre-*Jones* law by the judiciary and the bar is beyond dispute. The principle was well-settled and frequently repeated in the opinions of this Court. *See, e. g., Commonwealth v. Dews,* 429 Pa. 555, 239 A.2d 382 (1968); *Commonwealth v. LaRue,* 381 Pa. 113, 112 A.2d 362 (1955); *Commonwealth v. Flax,* 331 Pa. 145, 200 A.2d 632 (1938); *Commonwealth v. Pava,* 268 Pa. 520, 112 A. 103 (1920); *Commonwealth v. LeGrange,* 227 Pa. 368, 76 A. 63 (1911); *Commonwealth v. Sutton,* 205 Pa. 605, 55 A. 781 (1903); *Clark v. Commonwealth,* 123 Pa. 555, 16 A. 795 (1889). *See also, Sparf and Hansen v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). The reliance of the trial judges of this jurisdiction upon the former rule cannot be seriously challenged. The adverse effect upon the administration of justice in this Commonwealth, if retroactivity were afforded, has already been carefully and accurately documented in *United States ex rel. Cannon v. Johnson, supra,* at 1369–71, and

there is no need here to reiterate those compelling statistics. Suffice it to say that convictions in the most heinous murders would be in serious jeopardy.

A final aspect of this issue requires my comment. In *Commonwealth v. Cain*, 471 Pa. 140, 369 A.2d 1234 (1977), (J87 of 1974, filed January 28, 1977), the Opinion in Support of Reversal * advocated a partial retroactivity of the *Jones* rule so that it would be applied to those cases before us on direct appeal, but not to those attacking a prosecution collaterally. I do not believe such an approach is dictated either by law or policy. As the United States Supreme Court observed in *Stovall v. Denno, supra*:

> "We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. *We regard the factors of reliance and burden on the administration of justice as entitled to such overriding significance as to make that distinction unsupportable.*"

*Id.* 338 U.S. at 300–01, 87 S.Ct. at 1972. (footnote omitted) (emphasis added).

*See also Williams v. United States, supra* at 651–52.

Since the trial of the instant cause preceded the change in the rule announced in *Jones,* I must conclude that the ruling of the learned trial judge was in accordance with the then prevailing law and that the judgment of sentence should be affirmed.

---

* In *Cain,* the Opinion in Support of Affirmance was filed by Mr. Justice EAGEN (now Chief Justice EAGEN), joined by the former Chief Justice JONES and Mr. Justice POMEROY. Mr. Justice POMEROY also filed his own Opinion in Support of Affirmance. Mr. Justice ROBERTS filed an Opinion in Support of Reversal, joined by Mr. Justice O'BRIEN and Mr. Justice MANDERINO. Mr. Justice MANDERINO also filed his own Opinion in Support of Reversal. This writer did not participate in the decision of that case.