381 A.2d 125

COMMONWEALTH of Pennsylvania

v.

Alphonso BRIDGES, Appellant.

No. 113.

Supreme Court of Pennsylvania.

Argued Jan. 10, 1977.

Decided Dec. 1, 1977.

Jerry Zaslow, Philadelphia, Ronald T. Williamson, Paoli, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gaele Barthold, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Alphonso Bridges, was tried by a judge sitting without a jury and was found guilty of murder of the third

degree for the beating-stabbing death of Gerald Flowers. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of not less than two nor more than ten years in a state correctional institution. This appeal followed.

The facts surrounding this appeal are as follows. On January 20, 1975, James Gaddy and Daniel Lee, members of the "Clang Gang," solicited the decedent to buy a bottle of wine for them. This group proceeded to a state liquor store at Stenton and Ogontz Avenues in Philadelphia. Flowers entered the store while Gaddy and Lee remained outside. Before Flowers could buy the bottle of wine, members of "Sommerville," a rival gang, approached Gaddy and Lee. Both Gaddy and Lee urged Flowers to hurry, but these urgings went unheeded. The Sommerville Gang attacked Gaddy and Lee, during which attack Lee was stabbed.

After escaping from the Sommerville attack, Gaddy and Lee returned to a store located at 67th and Ogontz Avenue and telephoned for medical assistance for Lee. Gaddy and Lee decided that Flowers had delayed his departure from the state store in order to set them up for the Sommerville attack. Gaddy promised Lee that he would get Flowers. Upon leaving the store, Gaddy met four other members of the Clang Gang, appellant, Mark Savage, Miguel Garcia and Bernis Shelton. Gaddy informed the other gang members about the incident and then stated: "We're going to get him, now, going to go up and get him." The five then proceeded to search for Gerald Flowers. The Clang members encountered Flowers at 66th and Ogontz. Gaddy interrogated Flowers as to why he had delayed his departure from the state store and thus caused Lee's stabbing by the Sommerville gang. Flowers denied prolonging his stay in the store for the purpose of aiding the Sommerville gang to attack. This explanation was unsatisfactory to the Clang members. Flowers was then knocked down and all five individuals proceeded to punch and kick Flowers about the head and stomach. During the altercation Garcia pulled a knife and stabbed Flowers. The Clang gang was then

frightened away from the scene by the arrival of a mail truck. Flowers died shortly thereafter.

Appellant first argues that the Commonwealth failed to prove that he should be vicariously liable under § 306 of the Crimes Code for the death of Gerald Flowers. We do not agree.

Section 306 of the Crimes Code provides in pertinent part:

"(a) General rule.—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

"(b) Conduct of another.—A person is legally accountable for the conduct of another person when:

"(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

"(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

"(3) *he is an accomplice of such other person in the commission of the offense.*

"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

"(1) *with the intent of promoting or facilitating the commission of the offense, he :*

"(i) solicit such other person to commit it; or

"(ii) *aids or agrees or attempts to aid such other person in planning or committing it;* or

"(2) his conduct is expressly declared by law to establish his complicity.

"(d) Culpability of accomplice.—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense." (Emphasis added.)

Section 306(c) imputes criminal responsibility to a person who aids, agrees or attempts to aid a person or a group in the planning and/or commission of the offense if such aid, agreement or attempt is done with the "intent of promoting or facilitating the commission of the offense." See *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Leach*, 455 Pa. 448, 317 A.2d 293 (1974).

Subsection (d) of § 306 of the Crimes Code, *supra*, limits the culpability of accomplices in crimes having a "particular result" as an element of that offense. In order to impose criminal liability on a person as an accomplice for a crime that has as an element a particular result, such person must act with the same culpability that would render a person acting as principal criminally responsible for the act.

In the instant case, appellant was convicted of murder of the third degree.

In *Commonwealth v. Boyd*, 461 Pa. 17, 23–24, 334 A.2d 610, 613 (1975), this court, in discussing the type and quantity of evidence necessary to sustain a conviction for murder of the second degree under the old Crimes Code, now murder of the third degree, stated:

> " 'To sustain a conviction of murder of either degree, the evidence must establish that the killing was committed with malice, *Commonwealth v. McFadden*, 448 Pa. 277, 292 A.2d 324 (1972).' *Commonwealth v. Coleman*, 455 Pa. 508, 510, 318 A.2d 716, 717 (1974). '[Malice] consists either of an express intent to kill or inflict great bodily harm, or of a " 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty' " indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963).' *Commonwealth v. Chermansky*, 430 Pa. 170, 175, 242 A.2d 237, 240–41 (1968). See *Commonwealth v. Coleman*, supra. 'Legal malice may be inferred and found from the attend-

ing circumstances of the act resulting in death. [citations omitted.]

"'Malice may be inferred from the use of a gun upon a vital part of the body, and the finder of fact is not required to ignore this inference merely because the defendant testifies that he did not intend to take a person's life. *Commonwealth v. Gidaro*, 363 Pa. 472, 70 A.2d 359 (1950).' *Commonwealth v. Robinson*, 452 Pa. 316, 323, 305 A.2d 354, 358 (1973). . . ."

Reviewing the evidence in the light most favorable to the Commonwealth,[1] and applying both the definition of murder of the third degree and the provisions of § 306 of the Crimes Code, *supra*, we are of the opinion that the Commonwealth has sustained its burden of proof beyond a reasonable doubt that appellant was an accomplice in the homicide of Gerald Flowers. Appellant agreed with four other gang members to get Flowers, they approached decedent and punched and kicked Flowers about the head and stomach. The requisite malice can be inferred from such "reckless" conduct. A factfinder could infer malice from the circumstances of the beating, and he is free to disregard appellant's denial that he knew that Garcia had a knife.

Appellant next argues that there was no causal connection between Flowers' death by stabbing and appellant's conduct. Appellant misperceives the imposition of liability by § 306 of the Crimes Code. Section 306 clearly places criminal responsibility on a person who aids another person in the commission of a crime. The other person may be the actual perpetrator or murderer, but if a person with intent of promoting or facilitating that person's act aids that person, he is criminally responsible.

An accomplice's conduct does not have to result in and of itself in the criminal offense, but rather an accomplice's conduct must, with the intent to promote or facilitate, aid one whose conduct does causally result in the criminal

---

1. *Commonwealth v. Young*, 446 Pa. 122, 123, 285 A.2d 499, 500 (1971).

offense. In the instant case the evidence is clearly sufficient to show that appellant's conduct was with the intent to promote the malicious, reckless and wanton attack on Gerald Flowers.

■ Appellant next argues that the court below erred in failing to suppress his confession because of noncompliance with this court's juvenile confession doctrine. See *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975). We do not reach the merits of appellant's argument because we are of opinion that if it was error to admit appellant's confession, it was harmless error beyond a reasonable doubt. Appellant took the stand and reiterated his prior statement given to the police.

In *Commonwealth v. Hart*, 471 Pa. 271, 274, 370 A.2d 298, 300 (1977), this court, in citing *Commonwealth v. Cummings*, 466 Pa. 332, 353 A.2d 381 (1976), stated:

" '. . . This court has consistently held that when a defendant takes the stand and reiterates the factual narrative contained in a confession claimed to be invalid—whether for constitutional infirmities or because of violation of Rule 130, Pa.R.Crim.P., 19 P.S. (1975 Pamphlet)—the admission into evidence of the alleged illegal formal confession, if error at all, is harmless error beyond a reasonable doubt. See *Commonwealth v. Saunders*, 459 Pa. 677, 331 A.2d 193 (1975); *Commonwealth v. Brittain*, 455 Pa. 562, 317 A.2d 219 (1974).' " [2]

Judgment of sentence affirmed.

**2.** The instant case is factually distinguishable from *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In *Harrison*, the United States Supreme Court found that the use of a constitutionally defective confession "impelled" the Defendant in that case to take the witness stand after his defense counsel stated that his client would invoke his Fifth Amendment right. In the instant case, appellant's defense was one that he did not have the requisite intent necessary for imposition of criminal responsibility in connection with Flowers' death. This record is devoid of any fact showing any impulsion on the appellant to testify by the use of his confession.

JONES, former C. J., took no part in the consideration or decision of this case.

NIX, J., files a concurring opinion.

ROBERTS, J., files a dissenting opinion in which MANDERINO, J., joins.

MANDERINO, J., files a dissenting opinion.

NIX, Justice, concurring.

The majority has concluded that even if the statement elicited from the minor appellant was done so in a manner violative of the rules set down by this Court in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), and its progeny, that violation would necessarily be harmless error beyond a reasonable doubt because at trial the appellant testified on his own behalf and reiterated the facts set forth in that challenged statement. I do not agree.

The fact that appellant repeated the facts at trial consistent with his earlier statements to the police could only attest to the veracity of that statement. This fact, however, provides no basis for concluding that an error which may have occurred by the admission of that statement is thereby rectified. The essence of our rules relating to the waiver by a juvenile defendant during police interrogation is based upon a consideration of the juvenile's lack of maturity and attempts to assure that the juvenile has been properly counselled through the intervention of adult guidance before permitting him to execute a waiver of his Fifth and Sixth Amendment rights. The rule of exclusion was therefore developed not because of the unreliability of such evidence but rather because of our concern that the youth of the accused prevented him from being capable without adult guidance of intelligently waiving fundamental constitutional protections.

It may very well have been that this appellant would not have been required to take the stand in his own behalf if the statement was, in fact, violative of the *McCutchen* rule. It therefore cannot be said that the mere fact that he did take

the stand after the statement had been entered against him by the Commonwealth in their case-in-chief, that an improper admission of that statement was harmless beyond a reasonable doubt. *Compare, Commonwealth v. Saunders,* 459 Pa. 677, 683, 331 A.2d 193, 195 (1975) (Dissenting Opinion, Nix, J., joined by Roberts, J.).

I am, however, able to agree with the result reached by the majority since it appears that the *McCutchen* argument was not preserved for appellate review. The defense did not raise the admissibility of Bridges' confession as a basis for relief in its written post-trial motions filed in the court below, thus under the ruling of this Court in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), the matter is not cognizable on appeal at this time.

ROBERTS, Justice, dissenting.

The majority concludes that, even if appellant's in-custody statement was improperly admitted into evidence at trial, the error was harmless because appellant's trial testimony repeated the substance of the in-custody statement. As I stated in my dissenting opinion in *Commonwealth v. Hart,* 471 Pa. 271, 274, 370 A.2d 298, 300 (1977) (dissenting opinion of Roberts, J., joined by Nix, J.), the majority's harmless error analysis cannot be reconciled with the Supreme Court's decision in *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). The majority asserts that *Harrison* is factually distinguishable. While the facts of Harrison may not be the same as those in this case, the applicable constitutional rule is the same. The facts today's majority claims the Supreme Court relied upon in *Harrison* were, in the express words of the Supreme Court, unnecessary to the Supreme Court's decision.

In *Harrison v. United States,* the United States Supreme Court held that, if an unconstitutionally obtained confession is admitted into evidence at trial, the government cannot use the defendant's subsequent trial testimony against him unless the government can prove that the confession did not induce the testimony:

"The remaining question is whether the petitioner's trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions. It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand . . . .. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. . . . Having 'released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony."

392 U.S. at 224–25, 88 S.Ct. at 2011. Thus, the majority's effort to distinguish *Harrison* reflects a complete misreading of the Supreme Court's opinion. The Supreme Court did not require that Harrison assert his fifth amendment privilege before trial to prevent the government from using his trial testimony against him; it was enough to prove that the illegally obtained confession was admitted into evidence before Harrison testified. Once it was shown that the confession was illegally obtained, the burden was on the government to prove that the confession did not "impel" the defendant's testimony. By requiring appellant to show more than that his in-custody statement was unconstitutionally obtained and that it was admitted into evidence before appellant testified, the majority has shifted the burden of proof onto appellant, contrary to both *Harrison* and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Only when the Supreme Court addressed the issue whether the government had shown that admission of the confession did not impel Harrison's testimony did the Supreme Court advert to counsel's statement Harrison would not testify at trial. Even then the Court was careful to explain that it would have found Harrison's testimony impelled by the confession, even if counsel had not made such a statement:

"No such showing [that the confessions did not induce defendant's trial testimony] has been made here. In his opening statement to the jury, defense counsel announced that the petitioner would not testify in his own behalf. Only after his confessions had been admitted in evidence did he take the stand. . . . *But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime* . . . ."

392 U.S. at 225, 88 S.Ct. at 2011–12 (emphasis added).

Moreover, the majority's reliance on appellant's failure to state at the start of trial his intention to invoke the privilege against self-incrimination overlooks that the trial at which Harrison testified took place before *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In this case, by contrast, appellant's pre-trial application to suppress was denied almost three months before trial. Thus, appellant knew well before trial the contents of his in-custody statement, and that it would be admitted at trial. If anything, a statement by appellant at the beginning of trial that he would not testify would make it appear less likely that his trial testimony was impelled by admission of his in-custody statement. A defendant's decision to change his tactics and testify at trial would appear to be the product of some unanticipated evidence, rather than an attempt to explain a statement he had known about for three months. To hold that a defendant must announce at the beginning of trial that he does not intend to testify is to require the defendant to perform a meaningless formality in order to preserve his suppression claim.

My review of the record convinces me that the Commonwealth has failed to meet its burden of proving that appellant was impelled neither to testify, nor to testify in the manner he did, by the admission of the in-custody statement.[1] I am also convinced that the in-custody statement

---

1. Indeed, the record adds additional support to the conclusion that use of appellant's in-custody statement induced his trial testimony.

was unconstitutionally obtained. See *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977).[2] Consequently, I would reverse judgment of sentence and grant appellant a new trial.

MANDERINO, J., joins in this dissenting opinion.

MANDERINO, Justice, dissenting.

The majority cites our recent decision in *Commonwealth v. Hart*, 471 Pa. 271, 370 A.2d 298 (1977) to support its opinion that even if admission of appellant's confession were found to be error, it would be "harmless error beyond a reasonable doubt." I dissent for the reasons stated in the

The Commonwealth's principal witness, James Gaddy, had given a prior inconsistent statement. In his trial testimony, Gaddy named appellant as one of five youths who attacked the victim. In a statement to the police, Gaddy had also named five youths, but did not include appellant among them. Three of the youths Gaddy named at trial were different from those Gaddy identified in his statement to the police. In ruling on appellant's demurrer at the close of the prosecution's case, the trial court made clear the importance of appellant's in-custody statement:

"at this stage of the demurrer, Gaddy had testified in court specifically putting the defendant at the scene. Whether his testimony is—in view of the discrepancies and his situation [—] sufficient to carry for a conviction is another matter, but on the demurrer stage, he has certainly put the defendant as part of the conspiracy, and as part of the attackers of Flowers, *and defendant's own statement . . . puts the defendant in—at the scene and participating in the attack.*" (emphasis added)

As appellant had waived jury trial the trial court was also the finder-of-fact. Thus, the court's statement, recognizing that Gaddy's credibility was questionable and emphasizing the importance of appellant's in-custody statement, highlights how the admission of appellant's in-custody statement may have induced appellant to testify at trial, or to testify as he did. While the court's recognition of the importance of appellant's statement adds additional support for the conclusion that the Commonwealth has failed to meet its burden of proof, I would not require a defendant to point to such statements by the court. *Harrison* holds that once it is shown the defendant's statement was admitted into evidence the burden is on the Commonwealth to prove the statement did not induce the testimony.

2. Because post-verdict motions were filed before our decision in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), failure to raise this issue in written post-verdict motions does not bar appellant from raising this issue on appeal. See *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A.2d 793 (1968).

dissents of Mr. Justice Roberts and Mr. Justice Nix and in my concurring opinion to that case. *Hart, supra,* 471 Pa. at 275–77, 370 A.2d at 300–01.