Commonwealth *v.* Wright, Appellant.

602

Argued March 19, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Taylor P. Andrews,* with him *John H. Broujos,* for appellant.

*Kevin A. Hess,* Assistant District Attorney, with him *Edgar B. Bayley,* First Assistant District Attorney, and *Harold E. Sheely,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 22, 1975:

The principal issue presented in this appeal is whether the Commonwealth produced sufficient evidence at trial to prove appellant guilty of burglary[1] beyond a reasonable doubt.

The basic facts are not in dispute. On the evening of January 3, 1974, appellant, his brother Gary, Dennis Varner, and Terry Worthington, were driving in appellant's car in a rural area of Cumberland County because they planned to go hunting. Gary Wright was driving the automobile. As they were riding in the vicinity of a home owned by Clarence Chestnut, Terry Worthington told Gary Wright to stop the car; Worthington and Varner then got out of the car, and instructed Gary Wright to return in a few minutes. At that point, appellant and his brother drove off, and Worthington and Varner entered the Chestnut residence. According to the testimony

---

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa. C.S. §3502.

of Dennis Varner, neither he nor Worthington told the Wrights that they had planned to burglarize the home.[2]

After they had taken eight guns from the Chestnut residence, Varner and Worthington returned to the road, and waited five minutes before appellant and his brother returned. All eight guns were placed in the automobile. Varner testified he did not discuss where he got the guns because he thought "that was obvious." Terry Worthington corroborated Varner's testimony but added that Gary Wright stated on several occasions that "he didn't want nothing to do with it."[3] Appellant suggested that they take the guns to the home of Raymond Johnson. When they arrived at the Johnson residence, Terry Worthington told Johnson that he was moving and needed a place to store the guns.[4] On May 14, 1974, appellant was found guilty of burglary by a jury and was sentenced to eleven to twenty-three months' imprisonment.

The record is devoid of evidence implicating appellant in the actual burglary of the Chestnut home. Therefore, appellant was properly convicted only if he is vicariously liable for the criminal acts of Varner and Worthington, within the meaning of 18 Pa.C.S. §306.[5]

---

2. All four youths were brought to trial together. During the course of the trial, however, both Varner and Worthington entered pleas of guilty to the crime of burglary.

3. Gary Wright's demurrer was sustained by the trial court, largely on the strength of this testimony.

4. Briefly, the events resulting in the arrest of the four youths were as follows: Trooper Shelar testified that on the basis of an anonymous telephone call, he went to the Johnson home on January 7, 1974, and received seven of the eight guns reported missing. On that same day, Ray Varner testified that he saw a gun in his brother's car, and purchased it from him. Later that night, he read a newspaper article which stated that one of the stolen guns had not been recovered. He then took the gun to the local police, who in turn gave it to the state police. Eventually, the police arrested the four boys involved

5. Act of Dec. 6, 1972, supra.

"(a) *General rule.*—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

"(b) *Conduct of another.*—A person is legally accountable for the conduct of another person when . . .

"(3) he is an accomplice of such other person in the commission of the offense.

"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

"(1) with the intent of promoting or facilitating the commission of the offense, he . . .

"(ii) aids or agrees or attempts to aid such other person in planning or committing it . . ."

Vicarious criminal liability is premised upon the existence of a shared criminal intent. "It is well settled that the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. . . . It is equally as clear that this element of shared criminal intent must be found to be present to justify a finding that an accused was an accomplice." *Commonwealth v. Wilson,* 449 Pa. 235, 238, 296 A.2d 719 (1972). The Commonwealth must show by substantive evidence that the accused was "an active partner in the intent to commit [the crime]," *Commonwealth v. McFadden,* 448 Pa. 146, 150, 292 A.2d 358 (1972), in order to prove that the accused aided in the planning or commission of the crime. *See also Commonwealth v. Leach,* 455 Pa. 448, 317 A.2d 293 (1974); *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973).

Obviously, there will be few instances where explicit, direct proof of criminal intent will appear of record. Shared criminal intent, like an agreement to commit a criminal act, can be proven circumstantially. *Commonwealth v. Wilson,* supra. Thus, the driver of a "get away" car can be found guilty as an accomplice if it is reasonable

to infer that he was aware of the actual perpetrator's intention. His agreement to effectuate the escape aids the perpetrator in the planning and commission of the actual crime. See e.g., *Commonwealth v. Alexander*, 224 Pa. Superior Ct. 357, 307 A.2d 352 (1973). In a case such as *Alexander*, the accused's criminal intent is inferred from the circumstantial evidence presented. In the instant case, the "surrounding circumstances" are the facts that appellant was one of four youths riding in an automobile in a rural area; that two of the youths asked that the car be stopped on a country road near an isolated and darkened home; and that appellant and his brother returned some time later to pick up the two youths, who had emerged with eight stolen weapons. Under these circumstances, the jury verdict was proper.

Appellant acknowledges that the evidence must be viewed in the light most favorable to the Commonwealth, and that the Commonwealth is given the benefit of all reasonable inferences arising from the evidence. *Commonwealth v. Leach*, supra. Appellant places great emphasis upon the fact that both Varner and Worthington testified that neither told appellant of their intent to burglarize the Chestnut residence. This testimony, however, was subject to the scrutiny of the finders of fact, who were free to disbelieve it. There was sufficient evidence from which the jury could conclude that appellant shared the criminal intent of the perpetrators. Appellant's agreement to return to the scene amounted to conduct which aided in the planning and commission of the crime. Thus, there was sufficient evidence to convict.[6]

_____

6. One serious difficulty permeated the entire trial, and although not properly preserved for appeal, merits attention. Appellant concedes that his conduct amounted to some criminal violation, presumably as an "accessory after the fact." His entire trial strategy centered on the notion that he did not enter until the principal crime had already been completed. We have held that there was sufficient evidence for the jury to conclude that appellant shared

Judgment of sentence affirmed.

the criminal intent of the perpetrators prior to the actual burglary, and thus was properly convicted as an accomplice. Yet certain portions of the court's charge may have left the impression that appellant could be convicted as an accomplice even if the evidence proved only that he was an "accessory after the fact." We need not decide whether the charge would require reversal had it been properly objected to, but it is important to note why the confusion occurred.

Apparently, both the District Attorney and the lower court were under the impression that the new Crimes Code completely eliminates what formerly was referred to as an "accessory after the fact." This is incorrect. Although the precise words are not used, §5105 of the Code, entitled "Hindering apprehension or prosecution", prohibits the same kind of conduct. Thus, under §5105 it is unlawful to harbor or conceal a criminal, to provide a weapon, transportation, disguise or other means of effecting escape or avoiding apprehension, to conceal or destroy evidence of the crime, to warn the criminal of impending discovery or apprehension, or to volunteer false information to a law enforcement officer. Because the court did not attempt to distinguish between a principal and an accessory, there might have been some confusion on the part of the jury as to the crucial element, namely the time at which appellant joined in the criminal intent of the perpetrators.