371 A.2d 986

COMMONWEALTH of Pennsylvania

v.

William H. GARDNER, Appellant.

COMMONWEALTH of Pennsylvania

v.

James A. WHITE, Appellant.

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided March 31, 1977.

584

Chester A. Reybitz, Public Defender, Bethlehem, for appellant at No. 792.

Robert C. Brown, Jr., Easton, for appellant at No. 898.

Salvador J. Salazar, Assistant District Attorney, Northampton, and John E. Gallagher, District Attorney, Easton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellants William Gardner and James White along with a third co-defendant, Earl Heard, were tried jointly on charges of robbery, recklessly endangering another person and criminal conspiracy. The charges stemmed from the February 18, 1975 robbery of an A & P grocery store located at Fifteenth and Northampton Streets, Easton, Pennsylvania. The trial court sustained demurrers by all three defendants on the counts charging recklessly endangering another person. A hung jury resulted in the declaration of a mistrial as to defendant Heard. Appellants, however, were convicted of robbery and conspiracy.

At approximately 8:00 p. m. on February 18, 1975, three black males entered the A & P grocery store. After milling around the store for a few minutes, two of the men, Earl Heard and William Gardner, approached Mrs. Bauchspies, the sole cashier on duty that evening. Mr. Heard purchased a can of dog food and left the store. Although appellant Gardner accompanied Mr. Heard past the check-out counter, no witness knew whether he left the store at this time. In any event, a few minutes later appellants Gardner and White appeared at the check-out counter and purchased two or three packs of cigarettes. Approximately five minutes later, appellants were again observed approaching the cashier. This time they were carrying sandwich rolls

and lunch meat. After totalling the purchases, Mrs. Bauchspies saw Mr. Gardner place a five dollar bill on the counter. She asked if he had remembered everything this time. Gardner replied, "Yes, I want that drawer." He then reached into his pocket and partially withdrew a pistol. Mrs. Bauchspies saw the pistol and backed away. The gun snagged on Gardner's pocket and Mrs. Bauchspies heard several bullets fall to the counter. Gardner then took $129.00 in bills from the cash register. About this time, Mr. Donald Gilds, a store employee, appeared near the check-out counter. Gardner wheeled around, pointed the pistol at Gilds, and ordered him away from the counter. As Mr. Gilds began to run, a metal instrument, used for marking prices on cans, fell from his pocket. Appellant White shouted, "Hey, he's got a gun, too." The two thieves then left the store with their loot.

Mr. Gilds followed the appellants on foot. As he ran down Pine Street Mr. Gilds observed a white car with a black vinyl top driving away. About this time Gilds met Robert Volkert, who offered to chase the suspects in his car. Although the culprits were travelling at an estimated speed of over 50 miles per hour, Gilds and Volkert got close enough to observe the license number. At the corner of Fourth and Northampton Streets, they saw a policeman, Officer Corvatta, standing in front of a jewelry store. They informed Corvatta of the robbery and gave him the license number and description of the vehicle.

A few minutes later another police officer, John Border, Jr., who was patrolling the area in a marked police van, heard a police radio dispatch announcing the robbery. He began driving toward the A & P. As he approached a traffic circle on Northampton Street he received a second call reporting that the suspect vehicle, a black and white car with three negro males, was stopped at a red light in the traffic circle. When he was three-quarters of the way around the circle, Officer Border observed a black and white Buick occupied by three black

males. By way of a third radio broadcast Officer Border was informed that Officer Corvatta could see the police van and that it was approaching the suspect vehicle.

Officer Border blew his horn and attempted to block the Buick's path. The vehicle began moving, however, and Border rammed the van into the side of the car, pushing it onto the sidewalk. Instead of stopping, the suspect vehicle sped away. Officer Border pursued with the van's siren on and lights flashing. The chase ended when the driver of the fleeing vehicle lost control and struck a car travelling in the opposite direction. The three men got out of the car and began running. Officer Border shouted a warning and, when the men failed to stop, fired several shots with his shotgun. Mr. Heard fell to the ground. Although the other two men appeared to have been wounded, they continued their flight into the surrounding woodlands. The next day, both men were apprehended.

## APPEAL OF JAMES A. WHITE

Appellant first contends that the evidence was insufficient to sustain both his robbery and conspiracy convictions. While appellant is correct in asserting that mere presence at the scene of a crime is not, in itself, sufficient to establish an active partnership in its commission, e. g., *Commonwealth v. Fields*, 460 Pa. 316, 333 A.2d 745 (1975), the evidence in the instant case was clearly sufficient for the jury to infer guilt beyond a reasonable doubt.

At trial, the Commonwealth proceeded on the theory that appellant was an accomplice to the robbery actually committed by appellant Gardner. Section 306 of the Crimes Code [1] provides, *inter alia*, that one is an accomplice if, "within the intent of promoting or facilitating the commission of the offense, he . . . aids or

1. 18 Pa.C.S. § 306.

agrees or attempts to aid . . . in planning or committing it. . . ." A person is guilty of conspiracy under the Crimes Code[2] if, with the intent of promoting or facilitating the commission of a crime, he

"(1) agrees with [one or more persons] that they or one or more of them will engage in conduct which constitutes such crime . . . or

(2) agrees to aid [one or more persons] in the planning or commission of such crime. . . ."

■ Our courts have repeatedly held "that the test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." (citations omitted) *Commonwealth v. Oates*, 448 Pa. 486, 489, 295 A.2d 337, 338 (1972); *see also Commonwealth v. Palmer*, 229 Pa.Super. 1, 323 A.2d 69 (1974). The evidence in the instant case clearly established appellant's direct assistance in the robbery when he erroneously warned Gardner that Mr. Gilds had a gun. The only questions even arguably remaining are whether the evidence established the conspiratorial agreement and the requisite intent. While these elements must be shown beyond a reasonable doubt, both an agreement to commit a criminal act and shared criminal intent can be proven circumstantially. *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Wright*, 235 Pa.Super. 601, 344 A.2d 512 (1975).

■ "A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a cor-

2.   18 Pa.C.S. § 903(a).

rupt confederation has in fact been formed." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). The evidence in the instant case demonstrates appellant's participation in the suspicious entry and canvassing of the store, the actual robbery and the flight from the scene. Because appellant's conduct indicated that he and Gardner were acting together with the common purpose of robbing the store, the jury properly inferred the existence of a conspiracy. *Commonwealth v. Esposito*, 236 Pa.Super. 127, 344 A.2d 655 (1975).

■■ The intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes, a defendant must act with the "intent of promoting or facilitating the commission of the offense." It is obvious, therefore, that the evidence was sufficient to prove the intent required of an accomplice if, as is the case, the conspiracy was proven. Moreover, the evidence clearly warranted an inference that appellant was aware of Gardner's intent. Such knowledge or awareness is sufficient to prove that the accused was "an active partner in the intent to commit [the crime]." *Commonwealth v. Wright*, 235 Pa.Super. 601, 605, 344 A.2d 512, 514 (1975); *see also Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975).

■ Appellant also asserts as error the trial judge's refusal to charge that "the defendant took the stand, that by so doing he did not assume any burden of proof, and that the burden of proof beyond a reasonable doubt is a never-shifting burden which remains on the commonwealth." Appellant submitted this request after the trial judge had completed his basic charge.[3] It is

**3.** Pa.R.Crim.P. 1119(a) provides as follows:
"Any party may submit to the trial judge written requests for instructions to the jury. *Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties.* The trial judge shall charge the jury after the arguments are completed and shall then rule on all written requests." (emphasis added)

well established that a trial judge is not required to accept a requested instruction verbatim, even if legally correct and timely filed. The court is free to select its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Reston*, 224 Pa.Super. 80, 302 A.2d 428 (1973). Where the basic charge properly covers a requested point, it is not error for the trial judge to refuse to give additional instructions. *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975).

■ At the beginning of his charge in the instant case, the trial judge instructed the jury, *inter alia*, in the following manner:

"[U]nder the law of our commonwealth, under our system of justice, ladies and gentlemen, [each defendant is] presumed to be innocent of all of these charges and that presumption of innocence remains with him unless and until you, as the members of the jury, have been convinced of their guilt beyond a reasonable doubt.

.     .     .     .     .     .     .     .

It is not the defendant's burden to prove that they are not guilty. Instead, it is the commonwealth that *always has the burden of proving each and every element of the crimes charged and that the defendants are guilty of those crimes beyond a reasonable doubt. The person accused of a crime is not required to present evidence or to prove anything in his own defense.* If the commonwealth's evidence fails to meet its burden, then your verdict must be not guilty." (emphasis added).

This charge was correct. As the Supreme Court noted in a similar situation, "[w]e fail to see, however, without engaging in highly unreasonable speculation, just how the jury could conclude that the qualitative standard applied to the Commonwealth's burden and repeatedly as-

serted by the trial judge can be transferred in the jury's mind as applying to a burden of the defendant, when the jury has been specifically told that there is only one burden which is on the Commonwealth and the defendant has no burden of proof or disproof." *Commonwealth v. Rose*, 449 Pa. 608, 611, 297 A.2d 122, 124 (1972). Moreover, appellant failed to make his request prior to closing argument as required by Pa.R.Crim.P. 1119(a). This Rule provides the court with an opportunity to examine suggested instructions so that, where adopted, they can be incorporated into the basic charge in a logical fashion without confusing the jury or unduly emphasizing a particular point. The lower court did not abuse its discretion in the instant case by failing to give the requested instruction.

Appellant finally contends that the Commonwealth committed prejudicial error requiring a new trial when the district attorney displayed to the jury two jackets, a pistol and several bullets which were ultimately held inadmissible. This issue is only partially preserved for our review. Timely filed post-verdict motions alleged that the "Defendant was prejudiced by the Commonwealth displaying a handgun to its witness . . . for identification as the handgun used in the robbery when said handgun was subsequently not admitted into evidence." Because the post-trial motions contain no allegations of error relating to the jackets or bullets, these questions are not properly preserved for our review. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 313 (1975).

The handgun was held inadmissible by the trial judge because of a break in the "chain of custody." At trial, the gun was shown to Mrs. Shirley Smith who, on the day after the robbery, captured Gardner near the home in which she was employed. While she was holding Gardner at gunpoint waiting for the police, she saw him throw something onto a frozen pond nearby. When

the police arrived, she informed Trooper Schott of her observation. Mrs. Smith and the trooper then walked to the pond and discovered that the object was a gun. Trooper Schott told Mrs. Smith not to touch the gun and called to another officer to bring a container. At this point Mrs. Smith left the scene. When Mrs. Smith was shown the exhibit at trial, she stated that it looked exactly like the gun she had seen appellant throw away. She was unable, however, to state whether Trooper Schott actually retrieved the gun from the pond.

The prosecution next called Officer David Rogers of the Wilson Borough Police Department. During a long side bar discussion, the district attorney informed the court that Officer Rogers received the gun from Trooper Schott. Appellant's attorney objected because Trooper Schott was not available to testify and Mrs. Smith had not seen him retrieve the gun. The district attorney eventually withdrew this portion of the offer. No other evidence was presented to establish the chain of custody and, therefore the trial judge refused to admit the handgun into evidence.

Appellant cites the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, The Defense Function § 5.6 (Presentation of Evidence) (Approved Draft, 1971) [4] as sole support for his position.

4. Section 5.6(c) and (d) and commentary thereto provide that:
    "(c) It is unprofessional conduct for a prosecutor to permit any tangible evidence to be displayed in the view of the judge or jury which would tend to prejudice fair consideration by the judge or jury until such time as a good faith tender of such evidence is made. (d) It is unprofessional conduct to tender tangible evidence in the view of the judge or jury if it would tend to prejudice fair consideration by the judge or jury unless there is a reasonable basis for its admission in evidence. When there is any doubt about the admissibility of such evidence it should be tendered by an offer of proof and a ruling obtained." Commentary c. to the above standards states that:
    "Tangible evidence involves special problems which require special treatment because such evidence is immediately visible once it is brought into the courtroom. As in subsection (b)

This contention is without merit. The record indicates that, at the time the district attorney showed the weapon to Mrs. Smith, he was making a good faith offer of the evidence with a reasonable chance of success. Three witnesses prior to Mrs. Smith had testified that Gardner possessed a handgun during the robbery. At a side bar conference, the district attorney expressed his belief that Mrs. Smith had seen Trooper Schott place the gun in an evidence bag. If the testimony had developed the facts in accordance with this offer of proof, the evidence would have been admissibile despite Trooper Schott's unavailability. A gap of this type, in the chain of custody, is not fatal to the admission of the evidence. *See Commonwealth v. Jenkins,* 231 Pa.Super. 266, 332 A.2d 490 (1974). Nothing in the record indicates an intentional distortion on the part of the prosecution. Appellant concedes as much in his brief. (Brief for Appellant at 9.) [5] It can hardly be contended that, on these facts, the district attorney had any reasonable doubt as to the admissibility of the gun when he showed it to Mrs. Smith. We, therefore, find no violation of section 5.6 of the ABA Standards quoted above.

In any event, the ABA Standards, like the Code of Professional Responsibility, embody standards of conduct rather than strict legal principles. A violation of these provisions does not automatically require a new trial. *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669 (1974); *Commonwealth v. Pfaff,* 233 Pa.Super. 153,

dealing with testimonial evidence, the purpose of subsections (c) and (d) is to prevent tangible evidence from coming to the attention of the trier of fact unless and until it is offered. The premature display of a tangible article in the courtroom may be unduly inflammatory even though it is later admitted. Hence, such an article should not be exposed to view until it is formally offered for admission in evidence. Moreover, the offer must be made in good faith. If there is any doubt as to the admissibility of the article, the display and tender should be made outside the presence of the jury."

5. At page 11 of his brief, appellant Gardner also conceded this fact.

335 A.2d 751 (1975). Other courts have declined to reverse convictions automatically for the type of violation now asserted. *United States v. Pratt,* 531 F.2d 395 (9th Cir. 1976); *United States v. Lewis,* 140 U.S.App.D.C. 345, 435 F.2d 417 (1970).

■ In the instant case, any prejudice was minimal. The gun was exhibited only once in the course of a two day trial. The district attorney did not flaunt the gun before the jury or comment on it in his closing argument. Moreover, four witnesses testified that Gardner possessed a handgun at the time of the robbery. During his charge, the jury cautioned the jury as follows:

"[T]here will go with you to the jury room one exhibit, which is the only exhibit I admitted into evidence. . . . The other exhibits were not admitted into evidence . . . and are not for your consideration in your deliberations in this case."

Under our law, prejudice resulting from erroneously admitted evidence may be rectified by cautionary instructions. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Murray,* 437 Pa. 326, 263 A.2d 886 (1970). The same should be true where the evidence is never admitted. Under all the circumstances presented in this case, it is clear that any possible error by the district attorney was harmless. *See e. g., Commonwealth v. Biebighauser,* 450 Pa. 336, 300 A.2d 70 (1973); *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967).

## APPEAL OF WILLIAM H. GARDNER

■ Appellant William H. Gardner raises three issues in his brief. Two of these issues are exactly the same as those raised by appellant White and need no further treatment at this time.[6] Gardner also contends that

6. The two issues involved the alleged prejudicial display of certain items of tangible evidence and the trial court's refusal to make an additional instruction on the Commonwealth's burden of proof. These issues are either waived or without merit as previously discussed.

the lower court erred in admitting the Commonwealth's exhibit number 1, a light tan jacket. He argues that no foundation was laid for the jacket's admission because there was no testimony that he was wearing the jacket at the time of his apprehension. This contention is without merit. Four of the Commonwealth's witnesses positively identified the jacket as the one worn by appellant during the robbery.[7] In such circumstances, the Commonwealth is not required to show where the object was found. Appellant's reliance on *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973), is completely misplaced. In that case, there was no evidence that the knife introduced into evidence was the murder weapon. The prosecution was required to link the knife to the appellant. This was accomplished by testimony that the knife was taken from the appellant's kitchen. In the instant case the positive identifications served the same purpose.

Because all of the issues raised by both appellants are without merit, we affirm the judgments of sentence entered by the court below.

HOFFMAN, J., concurs in the result.

---

7. The four witnesses were Mr. Lutz (NT 31), Mrs. Bauchspies (NT 77–8), Mr. Gilds (NT 12) and Mrs. Smith (NT 143).