452 A.2d 1058

**COMMONWEALTH of Pennsylvania**

v.

**Napoleon DAVENPORT, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 20, 1982.

Filed Nov. 19, 1982.

William John Fulton, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

After a non-jury trial, the appellant, Napoleon Davenport, was convicted of criminal conspiracy (18 Pa.C.S.A. § 903) and unlawful delivery of a controlled substance (35 Pa.C. S.A. § 780–113(a)(30)). On June 1, 1981, a sentence of 3 to 10 years imprisonment was entered for each offense and ordered to be served concurrently. This appeal followed.

On appeal, appellant assails the sufficiency of the evidence and claims that the trial court erred in allowing opinion testimony to be admitted into evidence regarding the typical *modus operandi* of drug sellers and erred in refusing to grant a mistrial. We affirm the judgment of sentence.

█ The test to be utilized in evaluating appellant's sufficiency of evidence argument is whether, viewing the entire record in the light most favorable to the Commonwealth, a finder of fact could reasonably have found that all elements of the crime charged had been proved beyond a reasonable doubt. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976).

Examination of the evidence pursuant to the preceding standard reveals the following: From May until September of 1980, Philadelphia police officer Miles Edward, Jr., was assigned to the Harrisburg area to conduct, in conjunction with the Pennsylvania State Police, a drug investigation in an undercover capacity for the Federal Drug Enforcement Administration. Also, during this period of time, the undercover agent traveled with an informant.

On July 23, 1980, at approximately 9:40 p.m., Officer Edward and his informant were standing on the corner of Third and Verbeke Streets in Harrisburg. A vehicle approached and the informant stated something to the driver, who reacted by pulling the vehicle over to the side of the street and parking. However, neither the driver nor the other occupant stepped out of the vehicle. Rather, the ensuing discussion and transaction were effectuated with the agent and informant standing on the passenger side of the vehicle. The appellant was visible to the officer, for he (appellant) was sitting in the front seat.

Initially, the informant engaged the driver in a conversation which elicited a remark that "he (the driver) only had a fifty dollar package of heroin," specifically referred to by the driver in street jargon as "boy". (N.T. 12) The officer then asked if he could have three packages for $120.00. The driver responded that he would sell him three $50.00 packages for $125.00. The officer agreed and handed $130.00 to the appellant to give to the driver, since the appellant was in between the two. After the appellant asked the officer if he had the exact amount, the $130.00 was passed to the driver, who, in turn, gave the appellant the three packages of heroin to give to the officer. At this point, appellant asked the driver if he could have change for ten dollars so he could give the officer the $5.00 owed to him. The driver said, "No." As a result, appellant exited the vehicle and made his way over to a tavern located at Verbeke and Susquehanna Streets. Upon returning, the appellant gave the officer his change.

After the transaction was completed, the group dispersed and the officer copied down the license number of the vehicle. The substance was, thereafter, tested and found to be heroin. Following this determination, the appellant was arrested and charged with the instant offenses.

 In proving a conspiracy, direct and positive testimony of the corrupt agreement is not necessary. *Commonwealth v. Tumminello,* 292 Pa.Super. 381, 437 A.2d 435 (1981); *Commonwealth v. Holman,* 237 Pa.Super. 291, 352

A.2d 159 (1975). This is so, for the unlawful agreement, which is at the heart of every conspiracy and the nexus which will invoke principles of vicarious liability, will rarely be proven by direct evidence of a formal agreement with precise terms. Indeed, the very nature of the crime of conspiracy makes it susceptible to proof usually by circumstantial evidence. Thus, the courts have traditionally looked to the relation, conduct, and circumstances of the parties and the overt acts of the co-conspirators in order to find a corrupt confederation. *Commonwealth v. Dolfi,* 483 Pa. 266, 396 A.2d 635 (1979); *Commonwealth v. Waters,* 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Tumminello, supra; Commonwealth v. Minnich,* 236 Pa.Super. 285, 344 A.2d 525 (1975). Additionally, it must be remembered that "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." (Citations omitted) *Commonwealth v. Lovette,* 498 Pa. 665, 670, 450 A.2d 975, 977 (1982). Restated, the facts and circumstances need not be absolutely incompatible with defendant's innocence, but the question of any doubt is for the fact-finder unless the evidence "be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943). *Accord Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977).

As this Court has stated recently:

"Regardless of the type of proof advanced by the Commonwealth, however, proof of a common understanding among the alleged co-conspirators is an indispensable element of the crime. Thus, the courts have held that mere association is not sufficient; . . . nor is mere presence at the scene of the crime sufficient to prove the agreement without a showing that the accused had prior knowledge of his alleged co-conspirator's criminal intent. Indeed, one's knowledge that another proposes unlawful action will not establish a conspiracy, . . ., absent proof that the

accused became an *active partner* in the criminal enterprise with knowledge of the agreement." (Citations omitted) (Emphasis in original) *Commonwealth v. Lynch,* 270 Pa.Super. 554, 570, 411 A.2d 1224, 1232 (1979); *see also Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963); *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977).

Appellant contends that the delivery and conspiracy convictions cannot stand because the Commonwealth failed to prove the existence "of a prior unlawful agreement[,] . . . shared criminal intent [or] . . . association between the parties and appellant." (Appellant's Brief at 13) Appellant attempts to analogize the instant case to *Commonwealth v. Anderson,* 265 Pa.Super. 494, 402 A.2d 546 (1979). In *Anderson,* the facts reveal that an undercover agent approached the accused and told him he wished to buy some heroin. The appellant agreed to sell the agent 11 bags of heroin for $50.00. At appellant's request, the agent accompanied him to his residence. Upon arrival, appellant's wife was sitting on the front steps. "While in his wife's presence, appellant directed [the agent] to give the money to her. [The agent] handed [the wife] $50 in pre-recorded bills, and remained outside with her while appellant went inside the building and returned with 11 glazed paper packets. While still in his wife's presence, appellant handed the packets to [the agent] and told him to see him again anytime." (Footnote omitted) *Id.,* 265 Pa.Superior Ct. at 499, 402 A.2d at 548.

After reviewing the evidence, the *Anderson* Court sustained appellant's conviction for selling heroin, but reversed his conviction of conspiring with his wife to sell such drug. The reversal was premised upon this Court's ruling in *Commonwealth v. Stephens,* 231 Pa.Super. 481, 331 A.2d 719 (1974). In *Stephens,* the accused was standing near his alleged co-conspirator when said person offered to sell marijuana to a plainclothes police officer. From Stephens' mute and unresponsive reaction to the unlawful deal, the Commonwealth sought to establish an inference that he had

prior knowledge of the deal and in fact made an agreement prior to it. We rejected this contention, noting:

"Appellant did not induce Cafurello[—the alleged co-conspirator], to sell marijuana, *nor did he aid or assist him at the time of the sale.* There was also no showing that appellant had received any money from Cafurello. In short, *the only thing that was shown was that appellant stood mute and unresponsive after overhearing the conversation between the [police officer] and Cafurello.* That evidence, while supporting an inference of knowledge, cannot support the further inference of agreement . . . ." (Emphasis added) *Id.,* 231 Pa.Superior Ct. at 489, 331 A.2d at 723.

Instantly, unlike in *Anderson,* the accused "overheard the initial discussion" between the undercover agents and his co-conspirator as to the terms of the proposed sale. On this point, it is to be noted that appellant does not argue that he was unaware that the slang term "boy", as utilized by the parties in conversation regarding the purchase to be made, referred to heroin. In fact, appellant concedes that "[t]he case at bar is stronger in light of [his] arguable knowledge that a drug transaction was taking place." (Appellant's Brief at 13); *see generally Commonwealth v. Goodyear,* 235 Pa.Super. 544, 547, 344 A.2d 672, 674 (1975). Such evidence is, at the very least, supportive of "an inference of knowledge" attributable to the appellant that an illegal transaction would and did take place. *See Commonwealth v. Stephens, supra.* However, "proof of guilt on a charge of conspiracy fails if it shows only that the accused was present at the scene of the crime and knew of its commission." (Citations omitted) *Commonwealth v. Henderson, supra,* 249 Pa.Super. at 480, 378 A.2d at 398. Consequently, it is important to determine whether the evidence established the conspiratorial agreement and the requisite intent. While these elements must be shown beyond a reasonable doubt, both an agreement to commit a criminal act and shared criminal intent can be proven circumstantially. *Common-*

*wealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Wright,* 235 Pa.Super. 601, 344 A.2d 512 (1975).

 The intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes, a defendant must act with the "intent of promoting or facilitating the commission of the offense." *Commonwealth v. Gardner,* 246 Pa.Super. 582, 587, 371 A.2d 986, 989 (1977). In the case at bar, we have evidence that the appellant was cognizant of the terms (price and quantity) of the heroin sale, handled the money and drugs during the transaction and inquired if the undercover agent had the correct amount to effectuate the purchase. Moreover, the testimony of the officer established that when he was unable to produce the exact amount, and the co-conspirator responded he had no change, appellant, of his own volition, alighted from the vehicle and secured change from a nearby tavern. Thus, unlike in *Anderson* and *Stephens,* here we do have the commission of various overt acts by the accused from which an "active participation" in a conspiracy can be inferred. For example, "[a]ppellant's . . . return to the scene [after securing change from the tavern] amounted to conduct which aided in the planning and commission of the crime[s]." *Commonwealth v. Wright, supra,* 235 Pa.Super. at 606, 344 A.2d at 515. Ergo, with this additional evidence the trier of fact was "ready to take the step from inferring knowledge to inferring intent and agreement." *Commonwealth v. Stephens, supra,* 231 Pa.Super. at 489, 331 A.2d at 722. Consequently, while the circumstances recounted *supra* are insufficient standing alone, they furnish a "web of evidence" linking the accused to the conspiracy beyond a reasonable doubt " 'when viewed in conjunction with each other and in the context in which they occurred.' " *Commonwealth v. Anderson, supra,* 265 Pa.Super. at 501, 402 A.2d at 549. As to the delivery count, we have reviewed the evidence and find it clearly sufficient to establish a violation under The Controlled Substance, Drug, Device and Cosmetic Act. 35 Pa.C.S.A. § 780–113(a)(30); *see also Common-*

*wealth v. Cameron,* 247 Pa.Super. 435, 440, 372 A.2d 904, 907 (1977) (Defining "Delivery").

Appellant's last argument concerns alleged trial court errors in: 1) overruling his objection to Officer Edwards testifying that the informant used the phrase "known drug dealers" in pointing out the appellant and the co-conspirator; and 2) allowing, again over his objection, Officer Edwards to opine that, based on his 9 years of service with the narcotic division, "usually the dealer does have the second person with them for protection and the second person has the title of which is called the lieutenant . . . ." (Appellant's Brief at 14–15)

Appellant urges that based on the prejudicial nature of such comments, the trial court erred in declining to grant a mistrial.

 In reviewing the validity of appellant's claims, our examination of the record indicates that trial counsel, who is also appellate counsel, filed a boiler plate post-trial motion asserting that the evidence was insufficient to support the verdicts and that the verdicts were contrary to the law. Although the motion contained a request to file additional and supplemental reasons "when the Notes of Testimony taken at trial ha[d] been transcribed and a copy thereof made available to . . . counsel[,]" the record reflects no effort to supplement such motion. This is contrary to the trial court's opinion, which addressed the appellant's claims, that such matters *were "present[ed]" in the motion.* Moreover, although the issues were considered by the court presiding over appellant's post-verdict motion, "there is no assertion or indication of record that these issues were raised in a brief presented to that court." *Commonwealth v. Burton,* 491 Pa. 13, 17 n. 1, 417 A.2d 611, 613 n. 1 (1980). The Commonwealth correctly points out that our Supreme Court in *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979) held that *specific* post-trial motions had to be submitted sixty days after the filing of that decision. In particular, the lead opinion of Chief Justice Eagen stated:

"The Commonwealth argues the issues now advanced by Gravely are not properly preserved for appellate review since they were not included in written post-verdict motions. *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). A brief raising the issues was presented to the post-verdict motion court, and the court considered the issues. Since a majority of this Court has heretofore considered such a brief, along with consideration of the issues raised therein by the trial court, sufficient to preserve issues for review under *Commonwealth v. Blair,* supra, on the basis of substantial compliance with Pa.R. Crim.P. 1123(a), we must reject the Commonwealth's argument. *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Hitson,* 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Jones,* 478 Pa. 172, 386 A.2d 495 (1978); *Commonwealth v. Pugh,* 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Perillo,* 474 Pa. 63, 376 A.2d 635 (1977); *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977).

But this Court's experience with *Commonwealth v. Grace,* supra, and its progeny has not been very satisfying. Counsel have more often than not failed to include the briefs in the record and, indeed, have often failed to even mention a brief was presented or filed in the trial court in the oral arguments and briefs before this Court. This unsatisfactory situation is perhaps best typified by *Commonwealth v. Slaughter,* supra, wherein we had to grant reargument because counsel failed to adequately advise us of the existence of a brief. Accordingly, in order to conclude this unsatisfactory situation, we now rule that sixty days after the filing of this opinion, only those issues included in post-verdict motions will be considered preserved for appellate review." *Commonwealth v. Gravely,* supra, 486 Pa. at 198–199, 404 A.2d at 1297–1298.

In the case *sub judice,* appellant filed his post-trial motion on March 6, 1981, which is well after the effective date (September 4, 1979) of the *Gravely* decision. *See Commonwealth v. Lynch,* 304 Pa.Super. 248, 450 A.2d 664 (1982).

Therefore, in compliance with the dictates of *Gravely,* the issues are held waived.[1] *Commonwealth v. Seeley,* 297 Pa. Super. 498, 444 A.2d 142 (1982); *see also Commonwealth v. Canady,* 297 Pa.Super. 292, 443 A.2d 843 (1982); *Commonwealth v. Vitacolonna,* 297 Pa.Super. 284, 443 A.2d 838 (1982) and *compare Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d 1328 (1982).

Judgment of sentence affirmed.

1. Even if, for the sake of argument, we were to hold that the issues were preserved for review, we find that the trial court's actions were not tantamount to the type of error warranting the relief requested. *See* Lower Court Opinion at 4–6; *see also Commonwealth v. Williamson,* 243 Pa.Super. 139, 364 A.2d 488 (1976) (verdict of a judge, sitting without a jury in criminal proceeding, need not be nullified merely as a consequence of exposure to prejudicial evidence); *Commonwealth v. Harris,* 186 Pa.Super. 59, 140 A.2d 344 (1958) (because of witness' long experience with narcotics, his testimony was that of an expert and was admissible as such).