J-S01042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                        :  PENNSYLVANIA
                                        :
             v.                     :
                                          :
                                        :
RIGOBERTO HERNANDEZ  :
                                        :
          Appellant          :  No. 1098 MDA 2018

Appeal from the Judgment of Sentence Entered December 20, 2017
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0001002-2017

BEFORE:  PANELLA, P.J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED FEBRUARY 19, 2019**

     Rigoberto Hernandez (Hernandez) appeals from the judgment of sentence imposed by the Court of Common Pleas of Lebanon County (trial court) following his jury conviction of two counts of Robbery, 18 Pa.C.S. §§ 3701(a)(1)(ii), 3701(a)(1)(vi), and related offenses.[1]  We affirm.

     On April 6, 2017, at approximately 11:30 a.m., Hernandez and his co-defendant, Orlando Nunez-Flores (Nunez-Flores), drove to the Fulton Bank

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Hernandez was also convicted of two counts of Criminal Conspiracy to Commit Robbery, 18 Pa.C.S. § 903; and one count each of Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a); Criminal Conspiracy to Commit Theft by Unlawful Taking, 18 Pa.C.S. § 903; Receiving Stolen Property, 18 Pa.C.S. § 3925(a); Criminal Conspiracy to Receive Stolen Property, 18 Pa.C.S. § 903; Fleeing or Attempting to Elude a Police Officer, 75 Pa.C.S. § 3733(a); Recklessly Endangering Another Person, 18 Pa.C.S. § 2705; and Reckless Driving, 75 Pa.C.S. § 3736(a).

located in Schaefferstown, Lebanon County.  Nunez-Flores entered the bank and demanded money from the tellers at gunpoint, while Hernandez waited in his vehicle.  After Nunez-Flores obtained $2,963.00 in cash, some of which was GPS-enabled for tracking, he ran out the front door and into Hernandez's vehicle.  Responding police officers pursued the GPS signal coming from Hernandez's sedan, which led to a high-speed chase ending with Hernandez's car crashing into a chain link fence.  Police officers pulled Hernandez out of the vehicle and took him into custody.  Nunez-Flores fled the scene but after a foot chase was captured with cash obtained from the robbery.

Hernandez and Nunez-Flores proceeded to a jury trial in October 2017. At its conclusion, both were found guilty of the above-referenced offenses. The trial court sentenced Hernandez to an aggregate term of not less than sixteen nor more than forty-nine years' incarceration.  Hernandez filed a timely post-sentence motion, which the trial court denied.  Hernandez timely appealed and complied with the court's directive to file a concise statement of errors complained of on appeal.  **See** Pa.R.A.P. 1925.

**I.**

On appeal, Hernandez again challenges the judgment of sentence and contends that he is entitled to a new trial for the same reasons that he did in his post-trial motions, i.e., that there was insufficient evidence to establish that he was an accomplice to the robbery and the jury verdict was against the weight of the evidence.  The crux of his argument is that he was not an

accomplice[2] to the robbery because he was wholly unaware of and did not participate in the bank robbery.

_____

[2] A person is an accomplice of another person in the commission of an offense if with the intent of promoting or facilitating the commission of the offense, "he . . . . aids or agrees or attempts to aid such other person in planning or committing it or his conduct is expressly declared by law to establish his complicity." 18 Pa.C.S.A. § 306(c). A person is therefore ""legally accountable for the conduct of another person when . . . . he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b). Our Supreme Court has summarized the requirements for establishing accomplice liability as follows:

> A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S. § 306; ***Commonwealth v. Spotz***, 552 Pa. 499, 716 A.2d 580, 585 (1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***See Commonwealth v. Murphy***, 577 Pa. 275, 844 A.2d 1228, 1234 (2004). (internal citations omitted). "The driver of a 'get away' car can be found guilty as an accomplice if it is reasonable to infer that he was aware of the actual perpetrator's intention. His agreement to effectuate the escape aids the perpetrator in the planning and commission of the actual crime." ***Corn. v. Wright***, 344 A.2d 512, 515 (Pa. Super. 1975).

After a thorough review of the record and the applicable law, we conclude that there is no merit to Hernandez's claim that the evidence was insufficient to support the verdict. The trial court gave a thorough summary of the overall facts presented at trial. (**See** Trial Ct. Op., at 2-10). The facts pertaining to Hernandez's involvement as an accomplice to the robbery are as follows:

- Lisa Marie Bickel, a teller, after testifying about the robbery, stated the day after the robbery, a State Trooper came to the bank and gave a description of the individuals caught indicating that one of the individuals walked with a limp. She stated that she remembered that a man had come into the bank the day before the robbery asking to change a one-hundred-dollar bill but she was unable to provide change since he was not a bank customer. A surveillance video from inside the bank from the day before the robbery was played for the jury. She identified the man who walked with a limp in the video as Hernandez.

- Heidi Swonger, a bank customer service representative, again after testifying about the robbery, stated that after the robber left the bank, she proceeded to the second set of doors at the entrance and observed him walking down the street and getting into the front passenger side of a gray, four-door sedan that was parked in an alley down the street from the Bank. Ms. Swonger was shown a picture of Hernandez's vehicle and identified the vehicle as the sedan she saw the day of the robbery. She also stated that she observed the interaction between Ms. Bickel and the individual the day before the robbery and identified Hernandez as the individual who came into the bank looking to change the one-hundred-dollar bill.

- Susan Tucker, the bank teller from whom the money was taken, stated that she placed the GPS-enabled stacks of money from each drawer and placed them into the Wal-Mart bag that the suspect gave to her.

- Chief Michael Lee Lesher of the South Lebanon Township Police Department testified that he was notified through a mobile application that a GPS notification from the Bank that it had been

robbed. Along with other officers, he pursued the GPS signal and was able to determine that it was coming from a gray sedan. After he activated his vehicle's lights and siren and pulled in front of the sedan, he noticed two occupants in the front of the sedan. Hernandez, the driver of the sedan, then pulled the vehicle up an embankment and moved around the police car and drove away. He then continued his pursuit through the local streets and eventually lost sight of the vehicle. He then heard on the radio that the sedan had been involved in an accident. Upon arriving on the scene of the accident, Chief Lesher observed the driver of the sedan, Hernandez, in custody, but noticed the passenger running away from the vehicle clutching what appeared to be a bag in his hand.

- Officer Randall J. Morgan testified he pursued the vehicle and watched it drive into a chain link fence, whereupon, he used his vehicle to block it. The passenger fled, but the officers on scene were able to pull the driver, later identified as Hernandez, out of the vehicle and take him into custody. When he returned to the vehicle, he observed a black handgun, a pistol and an orange and white pair of gloves on the passenger side.

- Sergeant Andrew Herberg of the North Lebanon Police Department testified that as he approached the scene of the accident, he observed an individual wearing a dark long-sleeved shirt and jeans running toward his vehicle. Along with another officer, he pursued that individual on foot eventually losing sight of him. As they were backtracking through the area where the individual was last seen, he noticed an individual's legs sticking out from underneath a blue tarp. Sergeant Herberg drew his service weapon and ordered the individual to come out and put his hands up and found a gray bag full of money underneath the individual who later was identified Nunez–Flores.

Hernandez does not dispute any of the evidence as outlined above. Instead he testified that he was at his home in Harrisburg when he received a phone call from an acquaintance he knew as Bayamon through a drug rehabilitation support program, asking for a ride to Lebanon. He stated that he drove Bayamon to a certain location because Bayamon was going to try to borrow

some money to give to Hernandez for gas. When Bayamon got back to the car, he told him to drive back to Lebanon. He testified that when he stopped at a light when the police car pulled in front of them, he stated that Bayamon then took out a gun and told him if he stopped, that he would shoot him. When the car ran into the fence and the police vehicle pushed it from behind, he stated that he stayed with the car because he had no reason to run. When questioned on cross-examination, Hernandez denied that Nunez-Flores was the man that he drove to the bank on April 6, 2017.

We agree with the trial court that there was sufficient evidence to convict Hernandez as an accomplice to the robbery of the bank. As the trial court reasoned:

> [Hernandez] testified that a man known only to him as Bayamon called him for a ride and that he traveled from Harrisburg to Lebanon in order to give this person a ride. However, he also noted that he didn't know this person very well. [Hernandez] then denied that he knew that Bayamon intended or had robbed the Bank. However, several Bank employees and witnesses at trial testified that [Hernandez] had entered the Bank a day before the robbery. [Hernandez] essentially admitted as such during cross-examination of Ms. Bickel when he stated "[t]his is regarding the 5th of April . . . [t]he day I entered the bank."
>
> Furthermore, Ms. Swonger testified that she saw [Hernandez's] car waiting in an alley for Mr. Nunez-Flores. Ms. Swonger then identified a photograph of the vehicle that she saw. When the photograph was presented, [Hernandez] objected stating that "[the District Attorney is] showing a picture of my car." Again, [Hernandez] admitted that the photograph was of his car and Ms. Swonger identified the vehicle as the one waiting for Mr. Nunez-Flores.
>
> Viewing the facts in the light most favorable to the Commonwealth as the verdict winner, we find that the Commonwealth presented

- 6 -

sufficient evidence in order to prove [Hernandez's] liability as an accomplice to the robbery. Multiple witnesses identified [Hernandez] as an individual that entered the very same bank the day before and [Hernandez's] car was identified as the getaway vehicle. It is certainly within the jury's purview to infer from the circumstances that [Hernandez] intended, agreed and indeed, did aid in the commission of the crime.

## II.

Hernandez contends that because neither he nor Nunez-Flores testified that they took any part in the robbery, he should be granted a new trial because the jury placed too great a weight on the Commonwealth's witnesses regarding his participation in the robbery.[3] Again, as the trial court cogently observed:

_____

[3] "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

_Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence_. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

The Commonwealth not only presented multiple eyewitnesses to the robbery who also identified [Hernandez] as the individual who entered the Bank a day before the robbery, but also some who identified his vehicle from photographs as the getaway car. [Hernandez] admitted to the actions in his testimony, but denies that he knew of the robbery or that Mr. Nunez-Flores was the perpetrator, though he admitted knowing Mr. Nunez-Flores otherwise.

We find [Hernandez's] claims to be incredulous. Having already determined that the evidence presented to the jury at trial was sufficient to sustain the [Hernandez's] conviction and therefore, the verdict of the jury does not shock the conscience of this Court. The jury, as the trier of fact, "is free to believe all, none or part of the testimony presented at trial." *Corn. v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009). "The weight of evidence is not a question of mathematics, but depends on its effect in inducing belief." *Braunschweiger v. Waits*, 36 A. 155, 156 (Pa. 1897). In deciding whether to give credence to one witness' testimony over another's, the jury may be led by several factors, including "[t]he manner and appearance of the witness, the character of his story, and its inherent probability." *Id.* The jury was free to weigh the testimony of the Commonwealth's witnesses versus the testimony presented by the Defendant and make its own determination as to credibility and belief. This Court cannot disturb such determinations of the jury and the Defendant is not entitled to relief on this claim.

_____

and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice."

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (internal citations and quotation marks omitted) (emphasis in original).

We see no basis in the trial court's reasoning to find that it abused its discretion in finding that the verdict was not against the weight of the evidence.

Because viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented sufficient evidence to establish Hernandez's guilt where witnesses identified him as an individual who had entered the bank on the day before the robbery and identified his car as the getaway vehicle; and Hernandez's claim of ignorance of the robbery was incredulous, and the jury's verdict did not shock the conscience, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019