J-S21009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                     :             PENNSYLVANIA
                                                     :

                      v.                               :
                                                     :

WILLIAM F. ANDREWS JR.             :
                                                     :
                Appellant           :      No. 1375 EDA 2020

Appeal from the Judgment of Sentence May 26, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003837-2016

BEFORE:    BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED JULY 30, 2021**

William F. Andrews, Jr. appeals *nunc pro tunc* from his aggregate judgment of sentence of thirteen to thirty years of imprisonment imposed after he was convicted of burglary, aggravated assault, criminal trespass, simple assault, and recklessly endangering another person ("REAP"). In this Court, Appellant's counsel, Talia R. Mazza, Esquire, has filed an application to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We deny counsel's application to withdraw and order counsel to file an advocate's brief.

Appellant's convictions stem from the events of the night of July 2, 2016, when he and two associates, wearing masks and latex gloves and possessing

---

[*] Retired Senior Judge assigned to the Superior Court.

a pellet gun, entered the basement living quarters of Troy Imbody, where he was in bed. Fearing for his life, Mr. Imbody grasped a nearby machete and took a swipe that severed Appellant's left hand. In an ensuing struggle with Appellant's comrades, Mr. Imbody was shot in the face and chest with the BB gun and cut by the machete. Police arrived after the intruders had fled and recovered Appellant's hand, which was still encased in the blue latex glove. Police let local hospitals know that they were interested in any recent admittees with missing left hands, and subsequently learned that Appellant's cohorts had driven to one and deposited him on the curb. Physicians were able to reattach Appellant's hand.

At trial, Appellant testified in his defense that he had been unaware of his comrades' criminal intent in entering Mr. Imbody's dwelling. He claimed that he believed that he was merely there to help recover personal items of the girlfriend of one of his companions, and that he was still wearing the latex gloves at around midnight from work he had done earlier in the day on boat renovations. Nonetheless, a jury convicted Appellant of the crimes detailed *supra*. Appellant was sentenced as indicated above on May 26, 2017. Appellant filed a timely post-sentence motion on June 5, 2017, upon which neither the court nor the clerk of courts took action. Appellant timely filed a PCRA petition which resulted in the reinstatement of his direct appeal rights. Appellant promptly filed a notice of appeal following the trial court's June 12,

2020 order denying Appellant's post-sentence motion.[1]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this Court, Appellant's counsel filed both an ***Anders*** brief and a petition to withdraw as counsel.  The following legal principles apply to our consideration of these filings:

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous.  Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof . . . .
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf).  By contrast, if counsel's petition and brief satisfy ***Anders***, we will then undertake our own review of the appeal to determine if it is wholly frivolous.

***Commonwealth v. Wrecks***, 931 A.2d 717, 720-21 (Pa.Super. 2007) (citations omitted).  Our Supreme Court has further expounded upon counsel's duties as follows:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer

---

[1] Earlier appeals at 2074 EDA 2019 and 2113 EDA 2019 taken prior to the disposition of the post-sentence motion were discontinued and dismissed, respectively.

to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361.

Based upon our examination of counsel's application to withdraw and *Anders* brief, we conclude that counsel has substantially complied with the technical requirements set forth above.[2] As required by *Santiago*, counsel set forth the case history, referred to issues that arguably support the appeal, stated her conclusion that the appeal is frivolous, and cited some legal authority which supports that conclusion.[3] *See Anders* brief at 7-13. Therefore, we now proceed "'to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting *Santiago*, *supra* at 354 n.5).

---

[2] Appellant did not file a response to counsel's petition, and the Commonwealth, concurring with counsel's overall assessment, declined to file a brief in this Court.

[3] While we conclude that Appellant's counsel minimally complied with Santiago's requirements, as discussed *infra*, she did not provide a discussion of all the legal authority pertinent to the issues identified. Although we decline to find a lack of compliance in this instance, given our *de novo* standard of review for the issues raised, in future cases, counsel should ensure that all of the information necessary for examination of the issues is included in the *Anders* brief.

The issues arguably supporting an appeal cited by Appellant's counsel are whether the evidence was sufficient to sustain Appellant's various convictions either as a principal or an accomplice. ***See Anders*** brief at 11-13. The following guides our review:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Williams***, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

Although a sufficiency analysis necessitates consideration of each element of each crime, Appellant's counsel offered no specific discussion of each crime's elements in assessing the evidentiary sufficiency of Appellant's convictions. Furthermore, somewhat understandably in light of the lack of detail in the Rule 1925(b) statement, the trial court did not go through each element of each crime in its Rule 1925(a) opinion. Nevertheless, given the *de novo* standard of review of the legal question, we are able to conduct an appropriate examination of the issues.

The Commonwealth's case against Appellant, at least to some extent, was based upon accomplice liability. Our legislature has provided as follows, in relevant part, regarding criminal culpability as an accomplice:

**(a) General rule**.--A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another**.--A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined**.--A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice**.--When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S. § 306.

Our Supreme Court has summarized the mechanics of imposing accomplice liability as follows:

> [T]wo prongs must be satisfied for a defendant to be found guilty as an accomplice. First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. **While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so.** With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004) (emphasis added). The High Court has further explained that status as an accomplice as to some crimes does not "*per se* render[ ] a defendant liable as an accomplice for all other crimes committed. Rather, closer, offense-specific analysis of intent and conduct is required." *Commonwealth v. Knox*, 105 A.3d 1194, 1197 (Pa. 2014).

With these principles in mind, we turn to the particular crimes at issue. Appellant was convicted of burglary pursuant to 18 Pa.C.S. § 3502(a)(1)(ii), which provides that a person commits burglary if, with the intent to commit a crime therein, he enters a building adapted for overnight accommodations when any person is present.

The testimony of Troy Imbody established that, with the aid of the light from the adjacent laundry room, he saw two men enter through the unlocked screen door at the bottom of steps that led down from open Bilco doors in the back yard.[4] The men secured bandanas over the lower halves of their faces. The sight of one cocking a pistol caused Mr. Imbody to realize that the men were not friends making an unexpected visit. Mr. Imbody grabbed his machete, which happened to be nearby, and waited until one of the skulking figures got close enough that he felt the need to defend himself. He then took a swipe with the machete, striking one of the figures. Another man punched Mr. Imbody in the face repeatedly and pistol whipped him in the back of the head. The man drew the weapon to Mr. Imbody's sternum and fired, then put it to his temple and fired. Thereafter, Mr. Imbody was cut on the forehead by the machete before he was able to flee outside via the stairs the intruders had used to enter the house. *See* N.T. Trial, 5/1/17 (direct examination of Troy Imbody).[5]

Patrolman Ryan Grube located a severed human left hand encased in a blue latex glove, and subsequently received a call from Muhlenberg Hospital advising that a man was there missing a left hand. Bethlehem Police identified

---

[4] Bilco doors are double doors which provide direct access to the basement of a structure.

[5] Volume one of the trial transcript contains no page numbers.

the man as Appellant, and the hand recovered from Mr. Imbody's residence was reattached to Appellant's arm. *Id*. (direct examination of Ryan Grube).

We readily conclude that this evidence was sufficient to establish that Appellant is liable as a principal for burglary. It established Appellant's identity as one of the men who entered Mr. Imbody's house, a building adapted for overnight accommodations, without license or privilege. Further, the use of masks and gloves to conceal identity, along with the use of a weapon, allow the reasonable inference that the intent upon entry was to engage in criminal activity inside. *See Commonwealth v. Eck*, 654 A.2d 1104, 1108-09 (Pa.Super. 1995) ("The specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom.").

Appellant's REAP conviction required evidence that he recklessly engaged in conduct that placed or could have placed someone in danger of death or serious bodily injury. 18 Pa.C.S. § 2705. This Court has expounded that

> "serious bodily injury" is defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. To sustain a conviction for recklessly endangering another person, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The *mens rea* for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person.

> Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a fact-finder may conclude that a defendant proceeded with conscious disregard for the safety of other, and that he had the present ability to inflict great bodily harm or death.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa.Super. 2012) (cleaned up).

Here, the evidence viewed in the light most favorable to the Commonwealth reveals that Appellant and at least one other masked man, one of whom was armed with a loaded BB gun, snuck into a private residence at approximately 11:30 p.m. where they had no authority to be. This conduct disregarded the risk that a person could be shot with the BB gun during the course of the burglary. While such a weapon is not a firearm,[6] it certainly had the capability of causing permanent disfigurement or impairment of a bodily organ, such as an eye. *See Commonwealth v. Shaw*, 203 A.3d 281, 286 (Pa.Super. 2019) (holding that firing of BB gun into porch roof near victim created the danger of serious bodily harm sufficient to sustain REAP conviction.). Further, based upon Mr. Imbody's testimony, the jury was able to conclude that, although Appellant may not have fired the shot, he was liable as an accomplice for the use of the BB gun because Appellant acted recklessly

---

[6] *See Commonwealth v. Lowary*, A.2d 170, 170 (Pa. 1975) (holding that "a spring-activated hand gun which shoots small steel pellets (commonly called B-B-s)" is not a firearm)

in aiding in the burglary knowing that the weapon was involved. Hence, a sufficiency challenge to Appellant's REAP conviction is meritless.

Thus, we agree with Appellant's counsel that the evidence permitted the jury to find each element of burglary and REAP beyond a reasonable doubt. However, it is not so obvious and clear to us that the Commonwealth proved all elements necessary to establish criminal trespass, aggravated assault, and simple assault.

Regarding criminal trespass, Appellant was charged pursuant to the subsection graded as a second-degree felony, which provides: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . breaks into any building or occupied structure or separately secured or occupied portion thereof."[7] 18 Pa.C.S. § 3503(a)(1)(ii). **See also** 18 Pa.C.S. § 3503(a)(2) ("[A]n offense under paragraph (1)(ii) is a felony of the second degree.").

The statute defines "breaks into" as "[t]o gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S. § 3503(a)(3). "The term 'force' has been defined as (a) power, violence, compulsion, or constraint exerted upon

---

[7] A person may also commit criminal trespass by an unprivileged entry occurring when he "enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S. § 3503(a)(1)(i). A conviction under this subsection is graded as a third-degree felony. **See** 18 Pa.C.S. § 3503(a)(2).

or against a thing; (b) strength or power of any degree that is exercised without justification or contrary to law upon a person or thing." ***Commonwealth v. Cook***, 547 A.2d 406, 411 (Pa.Super. 1988) (cleaned up). This Court has held that, "[f]or purposes of Section 3503(a)(1)(ii), a felony of the second degree, gaining entry merely by entering through an unlocked door does not constitute 'breaking in.'" ***Commonwealth v. Reed***, 216 A.3d 1114, 1121 (Pa.Super. 2019) (citing ***Cook***, ***supra*** at 411 (holding unauthorized entry through an unlocked door was insufficient to support conviction for third-degree felony criminal trespass)).

As detailed above in connection with Appellant's burglary conviction, the evidence offered at trial was sufficient for the jury to conclude that Appellant entered the Imbody residence knowing that he was not licensed or privileged to do so. However, evidence that Appellant gained entry by breaking in appears to be lacking. Specifically, Troy Imbody testified that the Bilco doors outside the residence were open, given that the weather was pleasant that night, and the screen door at the bottom of the stairs had no lock. Hence, Appellant's entry was through an opening designed for human access, no lock was opened or broken, and it does not appear that the intruders exhibited any force or intimidation until after they had gained entry.[8] Consequently, we

_____

[8] When the police arrived after the incident, they found the screen door off its hinges and obstructing the walkway. ***See*** N.T. Trial, 5/1/17 (direct examination of Ryan Grube). However, Mr. Imbody's recitation of the
*(Footnote Continued Next Page)*

cannot conclude that an appeal challenging the sufficiency of the evidence to sustain Appellant's second-degree-felony criminal trespass conviction would be wholly frivolous.[9]  From our review, it appears that counsel has the factual and legal bases to put forward a good-faith argument that the evidence was insufficient to sustain Appellant's criminal trespass conviction pursuant to 18 Pa.C.S. § 3503(a)(1)(ii) as a second-degree felony.

Likewise, there appears to be a good-faith argument to be made that the evidence was insufficient to establish Appellant's culpability for the assault crimes.  The pertinent portion of the aggravated assault statute provides that the crime is committed if one "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"

_____

intruders' noiseless entry, which he initially believed could have been by visiting friends, does not suggest that the door was broken at that time. Instead, it appears that the damage was done when either Mr. Imbody or Appellant rapidly fled the basement after sustaining their respective injuries.

[9] During the Commonwealth's closing arguments, concerning the issue of the intruders' entry into the structure, it acknowledged that the testimony presented to the jury was that the doors to the basement were actually open before Appellant and his cohorts arrived. *See* N.T. Trial, 5/2/17, at 16. The Commonwealth explained to the jury that the burglary conviction did not require proof that any of the intruders opened a door to gain access to the home, merely that the entry was unauthorized.  However, the Commonwealth's closing failed to offer any discussion of the elements of the criminal trespass charge or an argument as to how the evidence established that the unauthorized entry was the product of a break in.  With the absence of an appellate brief from the Commonwealth, we are left with no indication of the Commonwealth's position on this issue.

18 Pa.C.S. § 2702(a)(1). Appellant's simple assault conviction required proof of an attempt to cause, or the knowing, intentional, or reckless actual causation of, bodily injury. *See* 18 Pa.C.S. § 2701(a)(1).

It does not appear that Appellant himself was the person who caused or attempted to cause bodily injury to Mr. Imbody. Rather, the physical altercation was initiated by Mr. Imbody removing Appellant's hand, and it was one or more other men who assaulted Mr. Imbody after Appellant was sidelined. Thus, Appellant's assault convictions, in order to be sustained, must be based upon accomplice liability.[10]

As noted above, status as an accomplice does not impose liability for all crimes committed by the principal in furtherance of criminal enterprise, but instead, "offense-specific analysis of intent and conduct is required." *Knox*, *supra* at 1197 (Pa. 2014). "An accomplice's conduct does not have to result in and of itself in the criminal offense, but rather an accomplice's conduct must, with the intent to promote or facilitate, aid one whose conduct does causally result in the criminal offense." *Commonwealth v. Bridges*, 381 A.2d 125, 128 (Pa. 1977). Similarly, the accomplice's intent need not be to cause a particular result, only to aid in the principal's commission of the offense. *See*, *e.g.*, *Commonwealth v. Roebuck*, 32 A.3d 613, 624 (Pa.

---

[10] If the Commonwealth believes that we have overlooked evidence which suggested that Appellant participated in the assault of Mr. Imbody either before or after losing his left hand, it is free to make that argument in its brief following remand.

2011) (holding defendant who did not shoot the victim could be convicted of third-degree murder through accomplice liability, where he acted with the requisite intent of malice when he participated in luring the victim to the crime scene, even though the killing was not an intended result of the crime).

As such, to find Appellant culpable for either assault charge as an accomplice, the Commonwealth had to offer the jury evidence to allow it to conclude beyond a reasonable doubt that Appellant intended to aid the principal's assault of an occupant of the house, that he actively aided or attempted to aid in the principal's commission of the assault, and that he did so with the *mens rea* element of the pertinent assault statute.

From our review of the trial transcripts, it is unclear whether the Commonwealth's theory of the case against Appellant was that the object of the burglary was a robbery or other theft crime, or rather an assault upon one or more occupants, albeit with only a BB gun as a weapon.[11]  There was no direct evidence that Appellant or either of his comrades intended to commit an assault in the Imbody home.  Indeed, the Commonwealth acknowledged at trial that it was unable to offer any motive for these crimes.  **See** N.T. Trial, 5/21/17, at 9-10.  In its closing argument, the Commonwealth argued that, although it was "somewhat speculative," it believed that the evidence

---

[11] Both the complaint and the criminal information merely alleged generically that Appellant intended to commit an unspecified crime in the Imbody residence, and the assault counts are premised upon Appellant himself wielding the BB gun and causing Mr. Imbody's injuries.

suggested that the intruders were surprised to find anyone in the basement and "therefore, they engaged in physical activity down there rather than perhaps having gone upstairs and done something by way of a robbery or an assault up there." N.T. Trial, 5/21/17, at 9-10.

Without evidence that an assault was actually contemplated by any of the intruders as the purpose of the burglary, or any indication that Appellant aided in the assault after he lost his hand, we fail to see how the evidence nonetheless allowed the jury to conclude that Appellant both intended to aid his cohorts in committing an assault and did offer such aid. It seems that the jury struggled with this issue, posing a question to the court during the course of deliberations concerning "the definition of accomplice as it relates to Count 3, for intent of aggravated assault." *Id*. at 60. Upon the trial record before us, it is not readily apparent to us what evidence permitted the jury to conclude beyond a reasonable doubt that Appellant had the specific intent to aid in an assault in the Imbody home, or that he acted with the requisite *mens rea* for imposition of vicarious liability for the assault crimes.

Accordingly, we cannot agree with counsel that sufficiency challenges to Appellant's convictions for aggravated and simple assault, or criminal trespass as a second-degree felony, are so clearly devoid of merit to warrant classifying this appeal as frivolous. The record reveals that counsel has sufficient legal ammunition to contend that the Commonwealth failed to prove all necessary elements of each crime beyond a reasonable doubt.

Therefore, we deny counsel's application for leave to withdraw and order counsel to file an advocate's brief as to those three convictions within sixty days of the date of this memorandum. The Commonwealth may file a brief in response within thirty days thereafter. The parties should address both the question of the evidentiary sufficiency of Appellant's trespass conviction as a second-degree felony under § 3503(a)(1)(ii), as well as his aggravated assault and simple assault convictions through principal and accomplice liability, along with the relief that would be due if we should determine that the elements of any of the crimes were not proven.

Application of Talia R. Mazza, Esquire, to withdraw as counsel is denied. New briefs are ordered. Panel jurisdiction is retained.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021